ROLAND L. BELSOME, Judge.
|, In this domestic proceeding, the plaintiff/appellant appeals two trial court judgments involving a community property partition and child support, For the reasons that follow, the community property partition judgment is reversed in part; amended and rendered. Additionally, the judgment denying Mr. Robeaux a reduction in child support is reversed in part, and remanded.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Lance Robeaux, the plaintiff, and Tre-chel Robeaux, the defendant, were married on June 18, 1994, and had two children during their marriage. Mr. Robeaux filed for divorce on April 29, 2005. Ms. Ro-beaux later filed her own petition for divorce in October of 2006. A divorce was granted on November 9, 2006.[1] Shortly thereafter, the parties entered into a consent judgment, establishing custody, visitation, and child support.[2] The parties filed their sworn detailed 12descriptive lists in September and October of 2007, which they later amended in 2012.[3]
On November 7, 2011, Mr. Robeaux filed a motion for a reduction in child support. He later filed a “Rule to Show Cause Why Child Support Payments for Dillon Ro-beaux Should Not Be Suspended.” After a two-day trial on the community property partition and support issues, post-trial memoranda were filed. The trial court subsequently rendered two separate judgments on November 9, 2012. In the first judgment, which addressed the community *663 property partition, Mr. Robeaux was ordered to pay an equalizing payment of $19,654.27, together with attorney’s fees of $2,000.00.[4] In the second judgment, the trial court denied Mr. Robeaux’s motions to decrease and/or suspend child support. This appeal follows.

DISCUSSION

Mr. Robeaux asserts ten assignments of error. The first six assignments involve the community property partition.[5] The remaining four involve the refusal to reduce or suspend child support.[6]

\,.COMMUNITY PROPERTY PARTITION

As it relates to the community property partition, Mr. Robeaux’s assignments of error involve his military retirement, and reimbursement claims that were not awarded to him. With regard to the military retirement, Mr. Robeaux asserts that the trial court erroneously found that Ms. Robeaux was entitled to one-half of Mr. Robeaux’s military retirement. Mr. Ro-beaux contends that he participated in this retirement before and after the marriage; therefore, Ms. Robeaux is only entitled to half of the retirement accrued during the marriage, in accordance with the formula set forth in Sims v. Sims, 358 So.2d 919 (La.1978).
In response, Ms. Robeaux notes that the trial court awarded Mr. Robeaux “]/¿ Military Retirement (earned during the marriage),” and Ms. Robeaux l% Military Retirement.” She argues that though the trial court did not again specify “earned during the marriage” as it related to her portion of the retirement, the court’s intent to divide between the parties only the portion earned during the marriage was clear.
|4Since the parties both agree, and the judgment is incorrect in awarding Ms. Robeaux half of the military retirement without limitation, we amend the judgment to clarify that Ms. Robeaux is only to receive one-half of the portion of Mr. Ro- *664 beaux’s retirement earned during the marriage in accordance with the Sims formula.

REIMBURSEMENT CLAIMS

Next, Mr. Robeaux asserts that the trial court failed to award reimbursement claims for: 1) one-half of $24,334.42 of unused Hurricane Katrina insurance proceeds received by Ms. Robeaux; 2) $21,660.00 for payment of community debts while he was in Iraq during 2005 and 2006; 3) $4,479.89 for payment of the loan to Regions Bank which encumbered a boat owned by the community; 4) $12,295.00 for payment of the parties’ community credit card debt amassed during the marriage; and 5) $11,500.00 in community assets, which were in Ms. Robeaux’s possession.
The trial court is vested with great discretion in effecting a fair partition of community property. Gallaty v. Gallaty, 11-1640, pp. 3-4 (La.App. 4 Cir. 10/3/12), 101 So.3d 501, 504 (citations omitted). An appellate court may not set aside a trial court’s findings of fact in absence of manifest error or unless they are cleaxiy wrong. Id. (citation omitted). It is well settled that a trial court has broad discretion in adjudicating issues raised in a judicial partition proceeding under La. R.S. 9:2801. If the trial court’s valuations of community assets ax-e reasonably | ¡-.supported by the l-ecord and do not constitute an abuse of discretion, its detei'mi-nations should be affirmed. Id. (citations omitted).
Mr. Robeaux contends that he is entitled to one-half of the unused insurance proceeds Ms. Robeaux received to repair damage to the community home caused by Hurricane Katrina. He asserts that $24,334.42 of the proceeds l’emained after innovations, and Ms. Robeaux used this money to supplement her living expenses. The trial court found that the claim was prescribed and refused Mr. Robeaux’s reimbursement claim.[7]
Significantly, Mr. Robeaux did not file for an accounting under La. C.C. art. 2369, but filed to partition the community property under La. R.S. 9:2801 at the same time he filed for divorce, on April 29, 2005. When he filed his original descriptive list in 2007, he listed a claim for the entire amount of the proceeds, $42,367.58. When he filed his amended descriptive list in 2012, he listed a claim for the remainder of the proceeds, $24,334.42. Under these circumstances, La. C.C. art. 2369 is not applicable. See Roge v. Roge, 604 So.2d 721 (La.App. 2 Cir.1992) (whei-e the coui't found that the prescriptive pei-iod set forth in art. 2369 did not apply where former wife filed for partition of community property rather than for accounting). Accordingly, we find that the trial court abused its discretion in finding that Mr. Robeaux’s claim for his half of the remaining proceeds was prescribed due to his failure to timely file an accounting.
|fiIt went uncontested at trial that Ms. Robeaux received $42,367.58 in insurance proceeds after the termination of the community propex-ty i“egime. Ms. Ro-beaux did not dispute that she renovated her home with the money, and she agreed that she used the l’emaining $24,000.00 to supplement her living expenses.[8] There *665 fore, the trial court’s judgment is hereby-amended to reflect that Mr. Robeaux is entitled to a reimbursement offset of $12,167.21 for half of the remainder of the insurance proceeds expended by Ms. Ro-beaux.
The next three reimbursement claims involve the separate satisfaction of community debt. Debts incurred during the community property regime are presumed to be community obligations. La. C.C. art. 2361. If separate property of a spouse has been used either during the existence of the community property regime or thereafter to satisfy a community obligation, that spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. La. C.C. art. 2865.
Mr. Robeaux claims he is owed reimbursement for $21,660.00 paid to Ms. Robeaux for the payment of community debts after the termination of the community. He contends that he paid these sums during a period between August 2005 and September 2006, while he was serving in Iraq.[9] Therefore, he seeks $10,830.00 in reimbursement.
|7There is nothing in the record to show that the money at issue was used to pay community debts. Thus, we cannot say that the trial court abused its discretion in refusing to reimburse Mr. Robeaux for one-half of that amount.
Next, Mr. Robeaux claims that he is entitled to a $12,295.00 credit for his separate payment of various community liabilities, and a $4,479.89 credit for his satisfaction of the mortgage on a community boat.[10] He argues that his testimony sufficiently proved that the debt was community debt that he consolidated and satisfied that debt.
The trial court denied the consolidated credit claims based on a lack of evidence. The only evidence admitted was a Consolidated Credit Counseling Services Statement of payments made from March of 2006 through April of 2008, after the termination of the community.[11] Though the debts may have arisen during the community regime, Mr. Robeaux submitted nothing at trial to support that the debts were paid with separate funds.
Mr. Robeaux contends that his testimony asserting that the consolidated debt was all community debt went uncon-troverted at trial; and therefore, it should be accepted as true. However, the record reflects that Ms. Robeaux only acknowledged the Home Depot debt and MBNA debt, which were the only items included on her descriptive list, as belonging to the community. In accordance with Ms. Ro-beaux’s testimony, the trial court reasonably allocated the two | «undisputed debts to the community.[12] Given the testimony *666 and lack of evidence, we cannot find that the trial court abused its discretion in failing to reimburse Mr. Robeaux for the remaining consolidated debt.
Mr. Robeaux further asserts that he is entitled to a reimbursement in the amount of $4,479.89[13] for his separate payment of the community’s boat mortgage. He further contends that the trial court erred in failing to credit him for one-half of this amount.
At trial, Mr. Robeaux testified that although it was a violation of the court’s injunction, he sold the boat for $2,000.00 sometime after he returned from Iraq. He explained that he had been paying the note on the boat, and the boat was not operational. He applied the funds from the sale to satisfy the community’s boat loan from Regions Bank. Plaintiffs Exhibit Two establishes that the Regions Bank loan was paid in full on November 28, 2007. In its judgment, the trial court allocated the community boat to Mr. Ro-beaux, and credited its value to Mr. Ro-beaux at $2,000.00. Though the record establishes that Mr. Robeaux used his separate property to make payments on the boat loan, there is no evidence in the record to establish the amount of these payments. Thus, we do not find that the trial court abused its discretion in failing to reimburse Mr. Robeaux for sums not clearly ascertainable by the record.
| flLastly, Mr. Robeaux asserts that the trial court failed to recognize all of the community’s assets, primarily home furnishings.[14] He maintains that these items remained in the home, and in Ms. Ro-beaux’s possession.
At trial, Ms. Robeaux denied being in possession of virtually all of the furnishings, except the china. She testified that these items were left in the family home when she moved out and Mr. Robeaux moved back into the home, pursuant to the mandates of the court. There was also evidence to establish that Mr. Robeaux destroyed the master bedroom furniture.
Based on the evidence, the trial court was reasonable in allocating possession of the only undisputed item, the china, to Ms. Robeaux. Therefore, we cannot find that the trial court abused its discretion in its ruling.

CHILD SUPPORT

The second rendered judgment that Mr. Robeaux complains of is the trial court’s failure to modify child support. He cites three reasons for the reduction or suspension of the child support award: 1) his underemployment, 2) an increase in Ms. Robeaux’s income, and 8) secreting his son, Dillon, by Ms. Robeaux.
An award of child support should not be modified unless the party seeking the modification shows a change of circumstances of one of the parties between the time of rendition of the previous award and the time of the motion for modification. La. R.S. 9:311(A). The party seeking the modification bears the burden of proving that a change in circumstances has occurred since the fixing of the prior award. State Through Dept. of Social Services, Office of Family Support *667 in the Interest of Seals v. Seals, 97-1508, p. 2 (La.App. 4 Cir. 10/29/97), 701 So.2d 746, 748 (citations omitted). If the moving party satisfies his burden, a presumption exists that the support obligation must be modified. The burden then shifts to the other party to disprove the change or otherwise rebut the presumption. The non-moving party may rebut the presumption in favor of reduction by showing that the moving party’s voluntary actions caused the change in circumstances, or that other factors mitigate against the reduction. Seals, supra (citing Polk v. Polk, 626 So.2d 1233 (La.App. 4 Cir.1993)). A trial court has great discretion in deciding whether a modification of child support is warranted, and such decisions will not be upset on appeal absent a clear abuse of that discretion. Rosenbloom v. Rosenbloom, 94-1762, p. 3 (La.App. 4 Cir. 4/26/95), 654 So.2d 877, 879.
Mr. Robeaux claims that the trial court abused its discretion in finding that he was voluntarily unemployed. With regard to the issue of underemployment, we are guided by La. R.S. 9:315(C)(5)(b), which defines “income” and states:
Potential income of a party, if the party is voluntarily unemployed or underemployed. A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party.
Voluntary underemployment [or unemployment] is a question of good faith on the obligor claiming to have a reduced income. See Hansel v. Hansel, 00-1914, p. 6 (La.App. 4 Cir. 11/21/01), 802 So.2d 875, 880 (citation omitted). It is a fact driven consideration; and, the trial court has wide discretion in determining the credibility of witnesses and its factual determinations will not be disturbed on appeal absent a showing of manifest error. Langley v. Langley, 07-754, p. 4 (La.App. 4 Cir. 3/26/08), 982 So.2d 881, 883 (citation omitted); Sequeira v. Sequeira, 04-433, 04-463, p. 11 (La.App. 5 Cir. 11/30/04), 888 So.2d 1097, 1105 (citation omitted).
At the hearing on the motion to modify child support, Mr. Robeaux testified that his active duty with the Army Counter Drug Task Force was limited to twenty years, and he was honorably discharged for this reason. Mr. Robeaux admitted that he was aware of the policy since he was hired with the program twenty years earlier. He stated that he still remained in the National Guard Reserves, and was seeking other employment opportunities, including applying for other active duty positions with the military. He also testified that he had started a lawn care business to supplement his income in the meantime. After the hearing, the trial court found that Mr. Robeaux was voluntarily unemployed as he knew or should have known that his employment was going to terminate; therefore, his argument that he was unable to anticipate and find gainful employment prior to his separation date was disingenuous.
Given the fact that Mr. Ro-beaux’s testimony regarding his discharge and his efforts to find employment went uncontroverted at trial, the trial court was manifestly erroneous in discrediting that testimony. See Katner v. Katner, 09-974, p. 10 (La.App. 4 Cir. 12/23/09), 28 So.3d 566, 574 (citation omitted)(the trier of fact should accept the unrefuted testimony of a witness as true). For this reason, we find that the trial court abused its discretion in refusing to reduce the child support award due to the involuntary change in Mr. Ro-beaux’s circumstances. 112However, the information in the record is insufficient to establish a modified obligation. Conse *668 quently, the case must be remanded for further proceedings.[15]
Finally, Mr. Robeaux asserts that the trial court abused its discretion in failing to find that Ms. Robeaux intentionally secreted their son, Dillon, from Mr. Ro-beaux.
Louisiana Revised Statute 9:315.23 provides in pertinent part as follows:
If one joint custodial parent or his agent is intentionally secreting a child with the intent to preclude the other joint custodial parent from knowing the whereabouts of the child sufficiently to allow him to exercise his rights or duties as joint custodial parent, the latter may obtain from the court an order suspending or modifying his obligation under an order of judgment of child support....
The record does not support that Ms. Ro-beaux intentionally secreted the minor child, Dillon. Instead, the record establishes that Dillon refused to participate in visitation due to a strained father-son relationship. Further, Ms. Robeaux continued bringing her daughter to all of the scheduled visitations with Mr. Robeaux. Accordingly, we find that the trial court did not abuse its discretion in failing to modify or suspend the child support for this reason.

DECREE

For the reasons discussed, the community property partition judgment is reversed to reflect that Mr. Robeaux is entitled to reimbursement for his half of the insurance proceeds ($12,167.21), and amended to clarify that Ms. Robeaux is entitled to receive half of the portion of Mr. Ro-beaux’s military retirement earned | isduring the marriage, according to the Sims formula. The judgment is hereby rendered to reduce the equalizing payment due to Ms. Robeaux to $7,487.06.[16]
Additionally, the judgment denying Mr. Robeaux a reduction in child support is reversed, and the case is remanded for further proceedings.
JUDGMENT OF PARTITION REVERSED IN PART; AMENDED AND RENDERED JUDGMENT ON REDUCTION IN CHILD SUPPORT REVERSED IN PART AND REMANDED.

. The parties agree that the community regime was terminated on April 29, 2005.

. Child support was not made retroactive.

. The September 4, 2007, minute entry reflects the dates the parties were to file their descriptive lists: Ms. Robeaux by September 17 and Mr. Robeaux by September 27, 2007. Mr. Robeaux timely filed his descriptive list despite the fact that Ms. Robeaux failed to file hers in accordance with their agreement. In addition, neither party traversed or concurred in the other's descriptive lists as required by La. R.S. 9:2801. Nevertheless, amended descriptive lists were filed, and the parties went to trial on the community property partition.

. Mr. Robeaux was ordered to execute a promissory note with simple interest fixed at 3.35 percent per annum, within thirty days of the final judgment, or pay the entire obligation within sixty days of the final judgment.

. The six assignments of error regarding the community property partition are: 1) the trial court committed legal error by not considering all assets listed in the parties’ sworn descriptive lists when determining the assets of the former community property; 2) the trial court committed legal error in determining that Trechel Robeaux is entitled to one-half of Lance Robeaux’s military retirement; 3) the trial court committed legal error by denying Lance Robeaux’s reimbursement claim of $24,334.42 for the remainder of the insurance proceeds from Hurricane Katrina; 4) the trial court committed legal error by failing to consider and/or denying Lance Robeaux's reimbursement claim of $21,660.00 for payment of community debts from 2005-06 while he was in Iraq; 5) the trial court committed legal error by denying Lance Robeaux's reimbursement claim of $4,479.89 for payment of the loan to Regions Bank which encumbered the aluminum boat; and 6) the trial court committed legal error by denying Lance Ro-beaux's reimbursement claim of $12,295.00 for the payment of the parties' community credit card debt amassed during the marriage.

.The four assignments regarding the denial of a reduction or suspension in child support are: 1) trial court committed legal error in determining that Lance Robeaux was voluntarily unemployed for the purpose of child support; 2) the trial court committed legal error by failing to allow Lance Robeaux to present relevant evidence to refute allegations that he voluntarily left active military duty; 3) the trial court committed legal error by denying Lance Robeaux’s reduction in child support without considering the gross monthly income of the parties; and 4) the trial court abused its discretion in finding that Trechel Robeaux did not secrete the minor child, Dillon Robeaux, from Lance Robeaux.

. La. C.C. art. 2369 provides:
A spouse owes an accounting to the other spouse for community property under his control at the termination of the community property regime.
The obligation to account prescribes in three years from the date of the termination of the community property regime.

. Although Ms. Robeaux testified at trial that the remaining amount was $24,000.00, it is apparent from the record that she rounded *665 the exact value ($24,334.42) to the nearest thousand to reach this figure.

. At that time, Mr. Robeaux’s mother and mandatory issued the payments to Ms. Ro-beaux on his behalf.

. The debt listed on Mr. Robeaux's descriptive list included debt from Home Depot, Regions Bank, Chase Bank, American General, Bank of America, Capital One, and Wells Fargo. However, Ms. Robeaux's descriptive list only recognizes reimbursement due to Mr. Robeaux for payments on the Home Depot credit card, and a MBNA credit card, which was not listed by Mr. Robeaux.

. At trial, Mr. Robeaux testified that all of the community debts, excluding the boat loan, were consolidated.

. This court may not set aside a trial court's finding of fact absence manifest error or unless it is clearly wrong; reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed on appeal. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).

. Mr. Robeaux’s descriptive list states that the amount was $4,479.98. Thus, the defendant’s brief appears to contain a clerical error.

. The disputed items include: master bedroom set, children’s bedroom sets, living room furniture, washer and dryer set, refrigerator, four television sets, fine china set, every day dishes, miscellaneous furniture, patio furniture, home décor, all clothing for children, toys and games for children, and family mementos.

. Since the casé must be remanded on the support issue, Mr. Robeaux's second argument regarding the trial court’s failure to consider Ms. Robeaux’s increase in income is moot. As such, we pretermit discussion of this assignment of error.

. The equalizing payment rendered by this Court, $7,487.06, represents the difference between, the equalizing payment ordered by the trial court ($19,654.27), and the reimbursement due to Mr. Robeaux from the insurance proceeds ($12,167.21).